# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| **MICHAEL J. REED** | **CIVIL DOCKET NO. 1:20-CV-00275** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SECURITY FIRST INSURANCE CO., ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment ("the Motion") [Doc. 28] filed by Defendants, Great West Casualty Company ("Great West"), Good Shepherd Trucking ("Good Shepherd"), and Saheb Alkhafaji ("Alkhafaji"). For the following reasons, the Court **GRANTS** the Motion.

### BACKGROUND

This personal injury action arises out of a multi-vehicle collision that occurred on September 10, 2018, on Interstate 10 ("I-10") eastbound in St. Martin Parish. [Doc. 28-2]. It is uncontested that Reed, while operating his 2014 Kenworth Tractor on behalf of Protective Cargo Transport, LLC ("Protective Cargo"), crashed into the rear of Alkhafaji's 2016 Volvo tractor-trailer. [*Id.*]. At the time of the accident, Alkhafaji was operating his tractor-trailer on behalf of Good Shepherd, a freight shipping and trucking company. [Doc. 1-1, Ex. A p. 2].

On September 9, 2019, Reed filed the instant lawsuit in the 35th Judicial District Court, Grant Parish, Louisiana, against Security First Insurance Company ("Security First"), Great West, Good Shepherd, and Alkhafaji seeking damages for injuries he allegedly sustained from the collision. [Doc. 1-1]. Specifically, the Petition

1

asserts a claim against Alkhafaji for negligent operation of his vehicle and against Good Shepherd for its negligent hiring, training, and supervision of Alkhafaji. [Doc. 1-1 ¶¶ 3, 4]. Defendants removed the action to this Court on March 3, 2020, on the basis of diversity jurisdiction.[1] [Doc. 1]. Reed voluntarily dismissed Security First on March 6, 2020. [Doc. 8-1]. Great West, Good Shepherd, and Alkhafaji filed this Motion on December 23, 2020, contending that summary judgment is proper because Reed cannot overcome Louisiana's statutory presumption that the rear-end motorist in a car collision is at fault. [Doc. 28].

In support of their Motion, Defendants submit the following evidence: (i) the Deposition of Michael J. Reed [Doc. 28-4, Ex. B], (ii) photographs of Reed's and Alkhafaji's vehicles post-accident [Docs. 28-5, 28-6; Exs. B-1, B-2], and (iii) Reed's Responses to Interrogatories [Doc. 28-7, Ex. C]. Additionally, Reed's vehicle was equipped with dash cameras, which captured the accident on video from both inward-facing and outward-facing angles. [Doc. 28-8, Wrinkle Affidavit ¶ 4]. A disc containing copies of the two videos was manually attached to the Motion as Exhibits D-1 and D-2 and is accompanied by the Affidavit of Bruce M. Wrinkle, Protective Cargo's Director of Safety, who certifies the authenticity of the video footage. [Doc. 28-8].

Exhibit D-1, the outward-facing dash camera's twenty-one second video footage portrays the following: (i) Reed's vehicle traveling in the right lane directly behind Alkhafaji's vehicle; (ii) sunny weather with some clouds; (iii) an eighteen-wheeler

---

[1]  Louisiana substantive law governs the Court's resolution of this Motion. *See Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938).

2

truck and a camper pulled over onto the right shoulder of the interstate; (iv) the brake lights of Alkhafaji's vehicle flashing on at second three and remaining illuminated until the collision; (v) the brake lights of a white vehicle in the left lane passing Reed's vehicle flashing on at second three; and (vi) Reed's vehicle crashing into the rear of Alkhafaji's vehicle at second nine. [Doc. 28-9]. The inward-facing dash camera's twenty-one second video footage provided to the Court in Exhibit D-2 shows Reed turning his head to the right at second eight of the video (in the direction of the eighteen-wheeler truck and camper pulled over onto the shoulder of the road) and then slamming on his brakes at second nine while, apparently simultaneously, experiencing the impact of colliding with Alkhafaji's vehicle. [Doc. 28-9].

Reed filed his Memorandum in Opposition ("Opposition") to the Motion on January 27, 2021. [Doc. 33]. Attached to his Opposition is his deposition [Doc. 33-2] and the Uniform Motor Vehicle Traffic Crash Report ("Crash Report"), which is accompanied by the Declaration of Jonathan E. Mitchell – counsel for Reed – who certifies that the report is a true and correct copy received from the Louisiana State Police.[2] [Doc. 33-3, Ex. 1]. Defendants submitted a reply brief on February 1, 2021. [Doc. 34]. The Motion is now ripe for ruling.

---

[2] Defendants object to the admissibility of the Crash Report in their reply brief. [Doc. 34]. The Court overrules that objection for purposes of the Motion and has taken the Crash Report into consideration in its ruling. *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) ("Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible ... the material may be presented in a form that would not, in itself, be admissible at trial.").

3

## S<small>UMMARY</small> J<small>UDGMENT</small> S<small>TANDARD</small>

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the Court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the

record as a whole "could not lead a rational trier of fact to find for the non-moving party...." *Id.*

## LAW AND ANALYSIS

Defendants move for summary judgment of Reed's claims, asserting that the evidence does not create a genuine issue that Alkhafaji's fault contributed to the collision. [Doc. 28-1]. Louisiana courts employ a duty-risk analysis in adjudicating negligence claims under Louisiana Civil Code Article 2315. *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019) (citing *Duncan v. Kansas City S. Ry. Co.*, 773 So. 2d 670, 675 (La. 2000)). To establish a cause of action for negligence, a plaintiff must establish that: (i) the defendant had a duty to conform his conduct to a specific standard; (ii) the defendant's conduct failed to conform to that standard; (iii) the defendant's breach was a cause in fact of the plaintiff's injuries; (iv) the defendant's breach was a legal cause of the plaintiff's injuries; and (v) actual damages. *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed.Appx. 565, 568 (5th Cir. 2020) (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So.2d 627).

Louisiana Revised Statutes 32:81(A) sets forth the duty of motorists who are traveling behind another vehicle: "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic condition of the highway." In the case of a rear-end collision, "Louisiana courts have uniformly held that a following motorist … is presumed to have breached the standard of conduct prescribed in La.Rev.Stat.Ann. 32:81 and hence is presumed negligent." *Ledet v. Burns*, CV 1:17-01350, 2019 WL

2077502, at *2 (W.D. La. May 10, 2019) (quoting *Mart v. Hill*, 505 So.2d 1120, 1123 (La. 1987)). As it is undisputed that Reed rear-ended Alkhafaji's vehicle, there is a rebuttable presumption that Reed was negligent.

To overcome this presumption, a rear-end motorist must prove that he "…had his vehicle under control, closely observed the lead vehicle and followed at a safe distance under the circumstances." *Jones v. Tim Williams Wood Products, LP*, 3:18-CV-00826, 2020 WL 3815265, at *4 (W.D. La. July 6, 2020) (quoting *Ebarb v. Matlock*, 46,243, p. 7 (La. App. 2nd Cir. 5/18/11); 69 So.3d 516, 521, *writ denied*, 2011-1272 (La. 9/23/11); 69 So.3d 1164)). Alternatively, the presumption may be rebutted by a showing that "the driver of the lead car negligently created a hazard which the following motorist could not reasonably avoid." *Ledet v. Burns*, CV 1:17-01350, 2019 WL 2077502, at *2 (W.D. La. May 10, 2019) (quoting *Garcia v. Stalsby*, 78 So. 873, 877 (La. App. 3rd Cir. 2011), *writ denied*, 85 So.3d 703 (2012)).

Here, Reed cannot establish that he "closely observed the lead vehicle" because both his deposition testimony and the video footage evince that he was not paying close attention to Alkhafaji's vehicle immediately prior to the crash. During his deposition, Reed recounted the following:

> Q: So you noticed the vehicles on the shoulder. And did you start braking at that point?
>
> A. I slowed down to pass. And when I got past, I just glanced over to make sure my truck and trailer was clear of it.
>
> …
>
> Q: And when you looked back forward you immediately noticed the trailer in front of you was coming to a stop?

6

> A: I didn't see no brake lights. I looked and I was, like, is he stopping? And then the accident happened.
>
> Q: So when you looked back up after looking over to the shoulder, you didn't immediately apply your brakes?
>
> A: No.

[Doc. 33-2, Ex. A p. 65–66]. Plaintiff's admissions in this regard are further confirmed by his statements to the investigating police officer in the Crash Report: "[Reed] stated that for a split second he became inattentive to the roadway. He stated that when he refocused on the roadway the traffic ahead had come to a complete stop. [Reed] stated that he immediately applied brakes, but he was unable to avoid collision."[3] [Doc. 33-3, Ex. B p. 11]. Significantly, the video footage shows that the brake lights of both Alkhafaji's vehicle and the white vehicle in the left lane passing Reed's vehicle clearly and visibly flashed on at second three. Reed's failure to apply his brakes during the seven seconds between Alkhafaji's and the passing vehicle's brake lights flashing on and the accident is compelling evidence that Reed was not closely observing Alkhafaji's vehicle.

There is also no evidence that Alkhafaji "negligently created a hazard." Although Reed posits that the Crash Report's diagram of the accident scene supports his hypothesis that Alkhafaji was unlawfully following "close enough to the truck in in front of it that it struck and pushed it into the two preceeding [sic] trucks," this claim is unfounded. [Doc. 33]. The diagram, which disclaims it is not to scale, simply

---

[3] Because these statements reflect the police officer's first-hand observations, and does not contain his opinions or conclusions, they constitute admissible lay opinion testimony that the Court will consider. *See Thomas v. Chambers*, CV 18-4373, 2019 WL 1989236, at *11 (E.D. La. May 6, 2019).

depicts the three points of impact between the four vehicles involved in the accident as well as a notation of skid marks that emanated from Reed's vehicle. [Doc. 33-3, Ex. B. p. 10]. Otherwise, the diagram does not reveal any information indicative of the distance between Alkhafaji's vehicle and the vehicle preceding him prior to the collision. No other evidence in the record creates a genuine issue that Alkhafaji created a reasonably unavoidable hazard. Ultimately, Reed cannot overcome the presumption of negligence using either manner of rebuttal.

Nevertheless, Reed's inability to negate the presumption of negligence does not automatically render him 100% at fault for the collision pursuant to Louisiana's comparative fault regime. *See* La. C.C. Art. 2323(A) ("If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss."); *see also Ledet v. Burns*, CV 1:17-01350, 2019 WL 2077502, at *2 (W.D. La. May 10, 2019). Indeed, in an action involving a rear-end collision, "[a] favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident." *Id.* (quoting *Matherne v. Lorraine*, 888 So.2d 244, 246 (La. App. 1st Cir. 2004)).

Even construing the record in a light favorable to Reed, there is no evidence that would enable a jury to reasonably conclude that Alkhafaji's conduct contributed

to the collision in any way. The video footage, which the Court finds quite compelling,[4] demonstrates that Alkhafaji's brake lights were unobstructed and plainly illuminated for seven seconds prior to Reed's attempt to brake. In addition, the Crash Report indicates that the three vehicles preceding Reed were at a complete stop when Reed crashed into the rear of Alkhafaji's vehicle, indicating that Alkhafaji was traveling at such a speed and distance behind the vehicle in front of him that gave him sufficient time to effect a stop. [Doc. 33-3, Ex. B pp. 3–9]. Therefore, Defendants are entitled to summary judgment as to Reed's negligence claim against Alkhafaji.

Reed has likewise failed to present any summary judgment evidence to support his claim against Good Shepherd for negligent hiring, training, and supervision. Accordingly, Defendants are entitled to summary judgment as to all claims.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. 28] is GRANTED.

IT IS FURTHER ORDERED that all claims asserted by Plaintiff are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 17th day of March 2021.

*[signature]*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE

---

[4] *See Dugas v. Ace Am. Ins. Co.*, 468 F.Supp.3d 769, 782 (W.D. La. 2020) ("This is not a case of dueling experts or credibility determinations appropriate for the jury, but a case where the video speaks for itself…").